UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
C.H ROBINSON WORLDWIDE, INC.,

                          Plaintiff,                              **REPORT AND**
                                                                  **RECOMMENDATION**
                - against -                                       19 CV 5403 (DLI)(CLP)

CKF PRODUCE CORP., *et al,*

                          Defendants.
----------------------------------------------------------X

**POLLAK,** Chief United States Magistrate Judge:

On September 23, 2019, plaintiff C.H. Robinson Worldwide, Inc. ("C.H. Robinson" or

"plaintiff") commenced this action against defendants CKF Produce Corp. ("CKF"), Koji Ueno,

and Elpidio Ueno (the "Uenos") (collectively, "defendants"), asserting a variety of claims

flowing from defendants' alleged failure to promptly and fully pay plaintiff for wholesale

quantities of produce sold and delivered by plaintiff to defendants. (Compl.[1] ¶¶ 7–16). Plaintiff

seeks a judgment against defendants jointly and severally under the Perishable Agricultural

Commodities Act ("PACA"), 7 U.S.C. § 499(e)(c), and the regulations issued thereunder, 7

C.F.R. § 46, 49 Fed. Reg. 45735 (Nov. 20, 1984), along with interest and attorney's fees and

costs. (Id. ¶ 40).

On January 31, 2020, after defendants failed to appear, or otherwise respond to the

Complaint, the Clerk of Court entered a certificate of default against all of the defendants.[2] On

February 28, 2020, plaintiff moved for default judgment, and on March 2, 2020, the Honorable

Dora L. Irizarry referred the motion to the undersigned to issue a Report and Recommendation.

---

[1] Citations to "Compl." refer to the Complaint, filed on September 23, 2019, ECF No. 1.
[2] See the Certificate of Default entered against defendants on December 4, 2019, ECF No. 10.

For the reasons stated herein, it is respectfully recommended that default judgment enter in favor of plaintiff and that plaintiff be awarded $28,564.00 in PACA Trust damages, together with $10,361.56 in accrued interest, plus $400.00 in attorneys' fees and costs.

FACTUAL BACKGROUND

Plaintiff alleges that it is a Delaware corporation, with its principal place of business located in Eden Prairie, Minnesota.  (Compl. ¶ 3).  According to plaintiff, it holds a federal produce license, No. 20001042, issued by the U.S. Department of Agriculture/PACA Branch, and is a wholesale seller of fresh fruits and vegetables nationwide.  (Id.)

Defendant CKF is alleged to be a New York corporation with a principal place of business located in Brooklyn, N.Y.  (Id. ¶ 4).  According to plaintiff, CKF is a dealer and commercial merchant of wholesale quantities of perishable agricultural commodities as defined in PACA, 7 U.S.C. § 499a.  (Id.)  Plaintiff alleges that Koji Ueno and Elpidio Ueno[3] are or were owners, officers, directors, and at least 10% shareholders of CKF during the relevant time period, and that they had control over the day-to-day management of the operations of CKF.  (Id. ¶ 5).  According to the Complaint, the Uenos had full control over the assets of CKF and were charged with a statutory fiduciary duty to ensure full payment to plaintiff in accordance with PACA's requirements.  (Id.)

Plaintiff alleges that in September 2018, it sold $28,564.00 worth of fresh fruits and vegetables on credit to CKF.  (Id. ¶ 7, Ex. A[4]).  The goods, which traveled through interstate

---

[3] On January 29, 2020, plaintiff voluntarily dismissed defendant Elpidio Ueno from the action. ECF No. 13.

[4] Citations to "Ex. A" refer to the Statement of Account and Unpaid Invoices, attached as Exhibit A to the Complaint.

2

commerce, were delivered to and received by CKF, but never paid for, despite due demand.  (Id. ¶¶ 8, 9, 12).  Pursuant to 7 U.S.C. § 499e(c)(2) and the relevant regulations, upon the receipt of perishable items, a statutory trust arose in favor of plaintiff as to these delivered commodities, until full payment is received.  (Id. ¶ 11). Plaintiff alleges that CKF has dissipated and continues to dissipate the statutory trust which arose in favor of plaintiff and the failure of defendant to hold the proceeds from the sale of such commodities until full payment is made violates PACA and the PACA Regulations.  (Id. ¶¶ 15, 16).  Plaintiff claims damages as a result of defendants' violations.  (Id. ¶ 16).

The Complaint asserts six claims for relief:  1) failure to maintain PACA trust assets asserted  against defendant CKF (id. ¶¶ 6-16); 2) dissipation of trust assets brought against all defendants (id. ¶¶ 17-21); 3) failure to account for and pay for produce in violation of 7 U.S.C. § 499b, brought against defendant CKF (id. ¶¶ 22-24); 4) breach of fiduciary duty, in violation of 11 U.S.C. § 523(a), brought against all defendants (id. ¶¶ 25-29); 5) breach of contract/action on account brought against defendant CKF (id. ¶¶ 30-34); and 6) a claim for attorneys' fees and costs brought against all defendants. (Id. ¶¶ 35-40).

PROCEDURAL BACKGROUND

On September 23, 2019, plaintiff filed the Complaint in this action seeking to recover the principal amount of $28,564.00, plus interest and attorneys' fees and costs incurred in plaintiff's efforts to recover for defendants' breach of the trust provisions under PACA, 7 U.S.C. § 499(e)(c).  (Compl.; Pl.'s Decl. [5] ¶¶ 10-11).  The Summons and Complaint were served on

---

[5] Citations to "Pl.'s Decl." refer to the Declaration of Teresa Bauman, Sourcing Division Controller of C.H. Robinson, dated February 3, 2020.  ECF No. 17-1.

defendant CKF on December 3, 2019 through service on the Secretary of State of New York. (ECF No. 8).  Defendant Koji Ueno was served on December 9, 2019 at his place of abode, 346 Autumn Avenue, 3rd Floor, Brooklyn, N.Y., by delivery to defendant's daughter, with a copy mailed to the same address on December 20, 2019.  (ECF No. 9).

When the defendants failed to appear or file an Answer, the Clerk of Court entered a default on January 31, 2020, and plaintiff thereafter filed the instant motion for default judgment against CKF and Koji Ueno on February 28, 2020.  (ECF No. 17).  As of the date of this Report and Recommendation, defendants have not appeared in this action nor have they opposed this motion, despite being served with the motion and supporting documents on February 4, 2020. (See ECF No. 17-4).

DISCUSSION

I.   Default Judgment

A.  Legal Standard

Rule 55 of the Federal Rules of Civil Procedure sets forth a two-step process for entry of a default judgment.  See Enron Oil Corp. v. Diakuhara, 10 F.3d 90, 95-96 (2d Cir. 1993).  First, the Clerk of Court enters the default pursuant to Rule 55(a) by notation of the party's default on the Clerk's record of the case.  See id.; FED. R. CIV. P. 55(a) (providing that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default").  Second, after the Clerk of Court enters a default against a party, if that party fails to appear or otherwise move to set aside the default pursuant to Rule 55(c), the court may enter a default judgment.  See FED. R. CIV. P. 55(b).

4

The Second Circuit has cautioned that since a default judgment is an extreme remedy, it should only be entered as a last resort.  See Meehan v. Snow, 652 F.2d 274, 277 (2d Cir. 1981). While the Second Circuit has recognized the "push on a trial court to dispose of cases that, in disregard of the rules, are not processed expeditiously [and] . . . delay and clog its calendar," it has held that the district court must balance that interest with its responsibility to "[afford] litigants a reasonable chance to be heard."  Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96. Thus, in light of the "oft-stated preference for resolving disputes on the merits," default judgments are "generally disfavored," and doubts should be resolved in favor of the defaulting party.  Id.  Accordingly, a plaintiff is not entitled to a default judgment as a matter of right simply because a defendant is in default.  See Erwin DeMarino Trucking Co. v. Jackson, 838 F.Supp. 160, 162 (S.D.N.Y. 1993) (noting that courts must "supervise default judgments with extreme care to avoid miscarriages of justice).

The Court has significant discretion to consider a number of factors in deciding whether to grant a default judgment, including:  (1) whether the grounds for default are clearly established; (2) whether the claims were pleaded in the complaint, thereby placing the defendants on notice, see FED. R. CIV. P. 54(c) (stating "[a] default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings"); Enron Oil Corp. v. Diakuhara, 10 F.3d at 95-96; cf. King v. STL Consulting, LLC, No. 05 CV 2719, 2006 WL 3335115, at *4-5 (E.D.N.Y. Oct. 3, 2006) (holding that Rule 54(c) is not violated in awarding damages that accrued during the pendency of a litigation, so long as the complaint put the defendant on notice that the plaintiff may seek such damages); and (3) the amount of money potentially involved – the more money involved, the less justification for entering the default judgment.  Hirsch v. Innovation Int'l, Inc., No. 91 CV 4130, 1992 WL 316143, at *2 (S.D.N.Y. Oct. 19, 1992).

5

Additionally, "the Court may consider whether material issues of fact remain, whether the facts alleged in the complaint state a valid cause of action, whether plaintiff[s] ha[ve] been substantially prejudiced by the delay involved, and whether the default judgment may have a harsh effect on the defendant[s]." Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd., 888 F.Supp.2d 385, 393 (S.D.N.Y. 2012) (internal citations omitted).

The burden is on the plaintiff to establish its entitlement to recovery. See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992), cert. denied, 506 U.S. 1080 (1993). When a default judgment is entered, the defendants are deemed to have admitted all well-pleaded allegations in the complaint pertaining to liability, but not as to damages. Id. Thus, the plaintiff must first establish the defendants' liability as a matter of law, since a defaulting defendant is not considered to have admitted to any legal conclusions. Advanced Capital Commercial Grp., Inc. v. Suarez, No. 09 CV 5558, 2013 WL 5329254, at *3 (E.D.N.Y. Sept. 20, 2013). It remains the plaintiff's burden to demonstrate that the uncontroverted facts establish the defendants' liability on each cause of action asserted. Finkel v. Romanowicz, 577 F.3d 79, 84 (2d Cir. 2009). In doing so, however, the Court draws all "reasonable inferences from the evidence offered" in plaintiff's favor. Id. (quoting Au Bon Pain Corp. v. Artect, Inc., 653 F.2d 61, 65 (2d Cir. 1981)).

B. Default Determination

1) Defendants' Liability Under PACA

Section 499(e)(a) of PACA states that "any commission merchant, dealer, or broker [who] violates any provision of section 499b of this title . . . shall be liable to the person or persons injured thereby for the full amount of damages . . . sustained in consequence of such violation." 7 U.S.C. § 499e. Section 499(e)(c)(1) is "intended to remedy . . . [the] burden on

6

commerce in perishable agricultural commodities" resulting from:

> financing arrangements under which commission merchants, dealers, or brokers, who have not made payment for perishable agricultural commodities purchased, contracted to be purchased, or otherwise handled by them on behalf of another person, encumber or give lenders a security interest in, such commodities, or on inventories of food or other products derived from such commodities, and any receivables or proceeds from the sale of such commodities or products[.]

Under the statute, these arrangements are regulated by requiring:

> [p]erishable agricultural commodities received by a commission merchant, dealer, or broker in all transactions, and all inventories of food or other products derived from perishable agricultural commodities, and any receivables or proceeds from the sale of such commodities or products, . . . [to] be held by such commission merchant, dealer, or broker in trust for the benefit of all unpaid suppliers or sellers of such commodities or agents involved in the transaction, until full payment of the sums owing in connection with such transactions has been received by such unpaid suppliers, sellers, or agents.

Id. § 499(e)(c)(2).  A "licensee may use ordinary and usual billing or invoice statements to provide notice of the licensee's intent to preserve the trust."  Id. § 499(e)(c)(4).

The Second Circuit has determined that "the legislative history and the text of . . . [PACA,] as well as implementing regulations[,] . . . make clear that trust assets are intended exclusively to benefit produce suppliers."  R Best Produce, Inc. v. Shulman-Rabin Mktg. Corp., 467 F. 3d 238, 242 (2d Cir. 2006) (citing American Banana Co. v. Republic Nat. Bank of New York, N.A., 362 F. 3d 33, 38 (2d Cir. 2004) (holding that the implementation of § 499(e) "afforded [sellers] a highly unusual trust beneficiary status that permitted them, in the case of defaults, to trump the buyers' other creditors, including secured ones")).  "[T]he trust is formed at the moment the produce is shipped to the buyer and remains in effect until the seller is paid in full."  Ger-Nis Int'l, LLC v. FJB, Inc., No. 07 CV 898, 2007 WL 656851, at *1 (S.D.N.Y. Mar.

1, 2007) (citing <u>In re Kornblum & Co.</u>, 81 F.3d 280, 286 (2d Cir. 1996)).  Therefore, the "buyer . . . 'has a fiduciary obligation under PACA to repay the full amount of the debt owed to the PACA beneficiary.'"  <u>Id.</u> (quoting <u>C.H. Robinson Co. v. Alanco Corp.</u>, 239 F.3d 483, 488 (2d Cir. 2001)).

To recover the proceeds from a PACA-created trust, a plaintiff must demonstrate "five elements."  <u>Maspeth Trading, Inc. v. Ou Jiang Supermarket, Inc.</u>, No. 12 CV 1997, 2014 WL 3548507, at *4 (E.D.N.Y. July 17, 2014); <u>see also</u> <u>Double Green Produce, Inc. v. Forum Supermarket Inc.</u>, 387 F. Supp. 3d 260, 267 (E.D.N.Y. 2019) (citations omitted); <u>A & J Produce Corp. v. Harvest Produce Corp.</u>, No. 17 CV 7239, 2017 WL 3668995, at *3 (S.D.N.Y. August 24, 2017) (citations omitted).  First, a plaintiff must have sold defendant "perishable agricultural commodities[.]"  <u>Maspeth Trading v. Ou Jian Supermarket, Inc.</u>, 2014 WL 3548507, at *4 (quoting <u>A & J Produce Corp. v. Chant</u>, 385 F. Supp. 2d 354, 358 (S.D.N.Y. 2005)) (other citations omitted).  Second, plaintiff must show that the "purchaser of the perishable agricultural commodities," the defendant, was a "commission merchant, dealer, or broker," pursuant to Section 499(a) of PACA.  <u>Id.</u>  Under the statute, the term "dealer" means "any person engaged in the business of buying or selling in wholesale . . . , any perishable agricultural commodity in interstate or foreign commerce."  <u>Id.</u> (quoting 7 U.S.C. § 499(a)(b)(6)).  "Third, the transaction [must have] occurred in interstate commerce."  <u>Id.</u> (quoting <u>A & J Produce Corp. v. Chant</u>, 385 F. Supp. 2d at 358).  Fourth, the seller of the perishable agricultural commodities must not have "received full payment [from defendants]" on the transaction.  <u>Id.</u>  Finally, the seller must have preserved its interest in the PACA trust "by giving written notice."  <u>Id.</u>; <u>Nathel & Nathel v. Carlos Produce</u>, No. 08 CV 4880, 2009 WL 3297799, at *2 (E.D.N.Y. Oct. 9, 2009).

As to the third requirement, that the transaction must occur in interstate commerce,

PACA defines "interstate or foreign commerce" as "commerce between any State or Territory, or the District of Columbia and any place outside thereof; or between points within the same State or Territory, or the District of Columbia but through any place outside thereof; or within the District of Columbia." 7 U.S.C. § 499a(3). Courts have interpreted the term "interstate commerce" broadly. Double Green Produce, Inc. v. Forum Supermarket Inc., 387 F. Supp. 3d at 269 (holding that plaintiff's assertion that "the goods [plaintiff] sold to [defendant] 'had been shipped or moved in interstate commerce'" was sufficient to established that the transactions had occurred in interstate commerce under PACA) (citing cases); see also Fishgold v. OnBank & Trust Co., 43 F. Supp. 2d 346, 349 (W.D.N.Y. 1999) (holding that the definition of interstate commerce under PACA "is essentially consistent with the broad definitions of interstate commerce developed by the Supreme Court") (citation omitted).

  2)   Analysis

  Here, it is beyond dispute that defendants CKF and Koji Ueno are in default. Neither of the defendants has filed an answer, nor have the defendants participated in this action despite proper service of the Complaint. Moreover, neither one of them has responded to either plaintiff's motion for default judgment or the Orders from this Court. See Hirsch v. Innovation Int'l, Inc., 1992 WL 316143, at *2 (holding that "[the defendant's] default is crystal clear – it does not even oppose this motion"). Thus, plaintiff's evidence on relief and damages with respect to defendants is uncontroverted.

  However, the plaintiff still has the burden to demonstrate that the uncontroverted facts establish the defendants' liability on each cause of action asserted. Based on the well-pleaded allegations in the Complaint, which the Court accepts as true for purposes of this motion, the pleadings allege all of the five elements required in order to bring a claim under PACA. See

Maspeth Trading, Inc. v. Ou Jiang Supermarket, Inc., 2014 WL 3548507, at *4.

Plaintiff has alleged that it sold "perishable agricultural commodities," id., thus satisfying the first of the five necessary elements.  (Compl. ¶¶ 3, 7; Pl.'s Decl. ¶¶ 3, 5).  Plaintiff must also allege that defendant was a "commission merchant, dealer, or broker," and "purchaser of the perishable agricultural commodities."  7 U.S.C. § 499(a)(b)(6)).  In the Complaint, plaintiff has satisfied the second element by alleging that CKF Produce "was, at all times relevant herein, acting as a dealer and commission merchant of wholesale quantities of perishable agricultural commodities in New York," and that defendant Ueno was the owner and principal corporate officer of CKF.  (Compl. ¶ 5; Pl.'s Decl. ¶ 2).  Plaintiff has satisfied the third element, that the produce sold traveled in or moved in interstate commerce, by alleging that it sold, "on credit and through interstate commerce, wholesale quantities of perishable agricultural commodities to Defendants."  (Compl. ¶ 7).

The fourth element alleged by plaintiff is that, as the seller of the perishable agricultural commodities, plaintiff has not "received full payment [from defendants]" on the transaction. Maspeth Trading v. Ou Jian Supermarket, Inc., 2014 WL 3548507, at *4.  Here, plaintiff alleges that despite due demand, defendants have not paid plaintiff $28,564.00 following the delivery and receipt of perishable fruits and vegetables.  (Compl. ¶¶ 32, 34).  The final element, which plaintiff has alleged, is that it preserved its interest in the PACA trust by causing "the exact language statutorily prescribed by PACA to be placed on all invoices by the licensee to notify the buyer that a seller/supplier of perishable agricultural commodities is preserving its rights as a beneficiary to the statutory trust." (Compl. ¶ 13).  See Nathel & Nathel v. Carlos Produce, 2009 WL 3297799, at *2.

3)  <u>Joint and Several Liability</u>

Plaintiff brings claims against both the corporate defendant CKF and Koji Ueno, who is alleged to be an owner, officer, director and shareholder, with day-to-day management of the company and "full control" over the PACA assets.  (Compl. ¶ 5).

"Under the doctrine of joint and several liability, when two (2) or more defendants act together to cause an injury, each defendant is liable to the victim for the total damages." <u>Ainbinder v. Money Ctr. Fin. Grp., Inc.</u>, No. 10 CV 5270, 2014 WL 1220630, at *3 (E.D.N.Y. Mar. 24, 2014) (citing <u>Zapico v. Bucyrus-Erie Co.</u>, 579 F.2d 714, 718 (2d Cir. 1978); <u>Newman v. Mor</u>, No. 08 CV 658, 2009 WL 890552, at *8 (E.D.N.Y. Mar. 31, 2009)).  As noted <u>supra</u>, plaintiff has sufficiently pleaded that defendant CKF Produce is liable to plaintiff under the PACA.  As to plaintiff's allegations that defendant Ueno should be held jointly and severally liable as to any damages owed to plaintiff, the Court accepts as true plaintiff's allegations that Ueno was "in control of, and responsible for, the day to day operations of CKF Produce and the disposition of CKF Produce's assets, including its PACA trust assets."  (Compl. ¶ 5).  The Court also accepts as true for purposes of this default motion plaintiff's allegations that Ueno is "listed on the PACA license as a reported principal" for CKF Produce.  (Kyser Decl.[6] ¶ 6).  Further, the Court accepts as true plaintiff's allegation that Ueno "improperly expended" proceeds from the sale of agricultural commodities and dissipated trust assets, causing damage to plaintiff.  (Compl. ¶¶ 18–21)

Based upon a review of the allegations in the Complaint, the Court finds that plaintiff has sufficiently alleged liability on the part of both defendants to warrant entry of a default judgment

---

[6] Citations to "Kyser Decl." refer to the Declaration of Eric M. Kyser, Esq. In Support of Plaintiff's Motion For Default Judgment, dated February 4, 2020.

11

for damages at this time.  Taken together and drawing all reasonable inferences in favor of

plaintiff, the allegations demonstrate that defendant Ueno was in control of defendant CKF

Produce at the time that plaintiff was injured.  The Court respectfully recommends that CKF

Produce, along with Koji Ueno, be held jointly and severally liable.


II.   Default Damages

    A.  Plaintiff's Damages

      1)  Legal Standard

When a default judgment is entered, the defendants are deemed to have admitted all well-

pleaded allegations in the Complaint pertaining to liability.  See Greyhound Exhibitgroup, Inc. v.

E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir. 1992); Montcalm Publ'g Corp. v. Ryan, 807

F.Supp. 975, 977 (S.D.N.Y. 1992) (citing United States v. Di Mucci, 879 F.2d 1488, 1497 (7th

Cir. 1989)); Au Bon Pain Corp. v. Artect, Inc., 653 F.2d at 65; Deshmukh v. Cook, 630 F.Supp.

at 959-60.  However, the plaintiff must still prove damages in an evidentiary proceeding at which

the defendants have the opportunity to contest the claimed damages.  See Greyhound

Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d at 158.  "'While a default judgment

constitutes an admission of liability, the quantum of damages remains to be established by proof

unless the amount is liquidated or susceptible of mathematical computation.'"  Levesque v. Kelly

Commc'ns, Inc., No. 91 CV 7045, 1993 WL 22113, at *4 (S.D.N.Y. Jan. 25, 1993) (quoting

Flaks v. Koegel, 504 F.2d 702, 707 (2d Cir. 1974)).

When a court enters a default judgment and the amount of damages sought does not

consist of a sum certain, Rule 55(b) of the Federal Rules of Civil Procedure provides that "[t]he

Court may conduct hearings or make referrals – preserving any federal statutory right to a jury

trial – when, to enter or effectuate judgment, it needs to . . . determine the amount of damages." Fed. R. Civ. P. 55(b)(2)(B). While "the court must ensure that there is a basis for the damages specified in a default judgment, it may, but need not, make the determination through a hearing." Fustok v. Conticommodity Servs., Inc., 122 F.R.D. 151, 156 (S.D.N.Y. 1988) (collecting cases).

       2)  Analysis

Here, plaintiff relies on Plaintiff's Declaration submitted by Teresa Bauman and a copy of the Statement of Account and attached invoices exchanged between plaintiff and defendants as evidentiary proof of damages. (Compl., Ex. A). The three invoices indicate the sale of produce from C.H. Robinson to defendants on three dates: 1) one shipment September 7, 2018 in the amount of $9,600.50; 2) a second shipment September 7, 2018 in the amount of $5,586.00; and 3) a shipment September 20, 2018 in the amount of $13,377.50, for a total of $28,564.00. (See id.). See also Hop Hing Produces Inc. v. X & L Supermarket, Inc., No. 12 CV 1401, 2013 WL 1232919, at *3 (E.D.N.Y. Mar. 4, 2013) (relying upon invoices submitted as exhibits to determine damages), report & recommendation adopted, 2013 WL 1232948 (E.D.N.Y. Mar. 27, 2013); Mikey's Choice LLC v. Fagos LLC, No. 08 CV 4492, 2010 WL 935550, at *3 (E.D.N.Y. Feb. 19, 2010) (same), report & recommendation adopted, 2010 WL 934260 (E.D.N.Y. Mar. 12, 2010).

Plaintiff's Declaration asserts that the total sum of the unpaid invoices – $28,564.00 – remains unpaid as of the date of the Declaration. (Pl.'s Decl. ¶ 10). Having reviewed the invoices submitted with the Complaint and plaintiff's motion papers, the Court confirms that the invoices total $28,564.00. Since defendants have chosen not to respond to the plaintiff's motion, and thus have not submitted any opposition to the Plaintiff's Declaration or its exhibits, the Court finds that plaintiff is owed the **$28,564.00** that defendants have failed to pay for the produce they

received.  Accordingly, it is respectfully recommended that plaintiff be awarded this amount in damages.

      B.  Prejudgment Interest

Plaintiff requests prejudgment interest in the amount of $6,971.50, calculated from the payment due date on each invoice through January 31, 2020, the date of filing of Plaintiff's Declaration. (Pl.'s Decl. ¶ 11).  Plaintiff also requests interest calculated from January 31, 2020 through the date of judgment, calculated at the rate of 1.5% per month, or 18% per annum.

      1)  Legal Standard

PACA  "is not clear as to whether . . . [the full amount of damages] includes attorney's fees or interest" when it explains that "any commission merchant, dealer, or broker violates any provision of [S]ection 499b of this title . . . shall be liable to the person or persons injured thereby for the full amount of damages[.]"  Tomato Mgmt., Corp. v. CM Produce LLC, No. 14 CV 3522, 2014 WL 2893368, at *1 (S.D.N.Y. June 26, 2014) (citing 7 U.S.C.A. § 499e) (emphasis added).

While PACA "does not itself establish a right to interest and collection costs," courts have found that "the purchaser is required to pay such items when the parties' contract so provides," and thus, "in such a case, the interest and collection costs become subject to the PACA trust together with the principal debt."  Dayoub Mktg., Inc. v. S.K. Produce Corp., No. 04 CV 3125, 2005 WL 3006032, at *4 (S.D.N.Y. Nov. 9, 2005) (citing Country Best v. Christopher Ranch LLC, 361 F. 3d 629, 632-33 (11th Cir. 2004); Middle Mountain Land & Produce Inc., v. Sound Commodities Inc., 307 F.3d 1220, 1222-26 (9th Cir. 2002); accord East Armata, Inc. v. Platinum Funding Corp., 887 F.Supp. 590, 594-95 (S.D.N.Y. 1995)).  In determining whether a plaintiff may recover prejudgment interest, "the pivotal question is whether the parties' contract

provides for an award of interest and collection costs in favor of [plaintiff]." Id.  For cases arising under PACA, courts have construed "standard-form provisions contained in invoices to constitute additional terms of the purchase agreement between the parties governed by N.Y. U.C.C. § 2-207(2)(b)." Tomato Mgmt., Corp. v. CM Produce LLC, 2014 WL 2893368, at *1 (citing Dayoub Mktg., Inc. v. S.K. Produce Corp., 2005 WL 3006032, at *4).

After a court determines that awarding prejudgment interest is appropriate, the court next determines whether the requested interest rate is reasonable.  "Courts typically look to the contractual terms contained in the invoices when determining the appropriate award." Taylor & Fulton Packing, LLC v. Marco Int'l Foods, LLC, No. 09 CV 2614, 2011 WL 6329194, at *8 (E.D.N.Y. Dec. 16, 2011) (citing John Georgallas Banana Distrib. of N.Y., Inc. v. N & S Tropical Produce, Inc., 07 CV 5093, 2008 WL 2788410, at *4–5 (E.D.N.Y. July 15, 2008); Top Banana LLC v. Dom's Wholesale & Retail Ctr., No. 04 CV 2666, 2005 WL 1149774, at *2 (S.D.N.Y. May 16, 2005) (holding that "[w]here the parties' contracts include [interest rate] terms, they can be awarded (and are subject to the PACA trust) as sums owing in connection with perishable commodities transactions under PACA")).

Courts have found that a plaintiff is "entitled to prejudgment interest at the rate of 1.5% per month specified in its invoices." Northeast Trading, Inc. v. Ven-Co Produce, Inc., No. 09 CV 7767, 2011 WL 4444511, at *5 (S.D.N.Y. Sept. 26, 2011); Bounty Fresh, LLC v. Paradise Produce, Inc., No. 09 CV 5577, 2010 WL 3781997, at *5 (E.D.N.Y. Aug. 18, 2010), report and recommendation adopted, 2010 WL 3746826 (E.D.N.Y. Sept. 17, 2010).  When "[t]here is no evidence that [defendant] ever objected to this provision, and . . . no evidence 'that the service charge of 1.5% per month, or 18% per annum, is outside the range of trade practice,'" courts may award prejudgment interest at that rate. Id.  (citing Brigiotta's Farmland Produce & Garden

Center, Inc. v. Przykuta, Inc., No. 05 CV 273S, 2006 WL 3240729, at *6 (W.D.N.Y. Jul. 13, 2006) (enforcing contractual interest rate of 1.25% per month on unpaid invoices in PACA case)).

        2) <u>Analysis</u>

Plaintiff explains that it is entitled to prejudgment interest because the invoices provided by plaintiff set forth defendants' duty to pay this sum. Specifically, each invoice exchanged between plaintiff and defendants included the following language:

> You agree to pay interest at 1.5% per month and any attorney's fees incurred necessary to collect payment. Interest and attorney's fees necessary to collect payment are sums owing in connection with the transaction.

(Compl., Ex. A).

The Court finds that this "standard-form provision," found in each invoice exchanged between the parties constitutes a "term[ ] of the purchase agreement between the parties[.]" <u>Tomato Mgmt., Corp. v. CM Produce LLC</u>, 2014 WL 2893368, at *1 (citing <u>Dayoub Mktg., Inc. v. S.K. Produce Corp.</u>, 2005 WL 3006032, at *4). Moreover, this provision explicitly states that "You agree to pay interest," and further that "[i]nterest . . .[is a] sum[ ] owing in connection with the transaction," in the event that plaintiff needs to collect a balance on any unpaid goods. (<u>See</u> Compl., Ex. A). Accordingly, the Court finds that plaintiff is entitled to prejudgment interest.

Next, the Court must determine whether plaintiff's requested interest rate of 18% per year, or 1.5% per month, is reasonable. (<u>See</u> Pl.'s Decl. ¶ 7). As the Court has noted, other courts have found that when there is "no evidence" that defendants objected to this interest rate or that "the service charge of 1.5% per month, or 18% per annum, is outside the range of trade practice,'" there is no reason not to award prejudgment interest at the rate of 18% per annum. <u>See</u> <u>Northeast Trading, Inc. v. Ven-Co Produce, Inc.</u>, 2011 WL 4444511, at *5. Given that

defendants have chosen not to participate in this action and no evidence has been presented to this Court suggesting that they either object to this interest rate or that it is outside the realm of standard trade practice, this Court finds that the interest rate of 18% per annum is reasonable.

After reviewing plaintiff's submissions as to prejudgment interest, the Court respectfully recommends that interest should be calculated for each unpaid invoice from the invoice's payment due date through January 30, 2020. The Court further recommends that plaintiff also be awarded interest from January 31, 2020 through the date of this Report and Recommendation. The following chart sets forth the prejudgment interest calculations owed on each invoice:

| Invoice No.[7] | Due Date[8] | Amt. Due | Per Diem Interest[9] | Period of Accrual[10] | Interest Due |
|---|---|---|---|---|---|
| 484868 | 9/17/18 | $9,600.50 | $4.73 | 742 days | $3,509.66 |
| 484876 | 9/17/18 | $5,586.00 | $2.75 | 742 days | $2,040.50 |
| 491364 | 9/30/18 | $13,377.50 | $6.60 | 729 days | $4,811.40 |
| | | | | **Total:** | **$10,361.56** |

Thus, the Court respectfully recommends that plaintiff be awarded a total of **$10,361.56** in prejudgment interest.

---

[7] These numbers represent the Invoice Numbers indicated on the records presented by Plaintiff as Exhibit A to the Complaint.

[8] The Due Date indicates the date on which payment was due for each invoice. (See Pl. Decl., Exhibit A).

[9] Calculated as 0.0493% of the amount due on the invoice, based on an interest rate of 18% per annum or 1.5% per month.

[10] Calculated as the number of days between the Due Date and the date of this Report and Recommendation.

III.    Costs and Attorneys' Fees

Plaintiff has also requested an award of costs and attorneys' fees in the total amount of $18,598.45  (Kyser Decl. ¶ 17).  As noted supra at 14, PACA explicitly provides for an award of attorneys' fees when "the parties' contract so provides," as the fees "become subject to the PACA trust together with the principal debt."  Dayoub Mktg., Inc. v. S.K. Produce Corp., 2005 WL 3006032, at *4 (citing Country Best v. Christopher Ranch LLC, 361 F. 3d at 632-33).  Courts have found that "standard-form provisions contained in invoices" are "additional terms of the purchase agreement between the parties."  Tomato Mgmt., Corp. v. CM Produce LLC, 2014 WL 2893368, at *1 (citing Dayoub Mktg., Inc. v. S.K. Produce Corp., 2005 WL 3006032, at *4).

In this case, plaintiff contends that it is entitled to attorneys' fees because the written invoices between plaintiff and defendants set forth defendants' duty to pay this sum.  Specifically, each invoice provides that "You agree to pay. . . any attorney's fees incurred necessary to collect payment." (Compl., Ex. A).  Given that the Court has already determined that this "standard-form provision" in each invoice is considered an additional term of the purchase agreement (see discussion supra at 16), and that the provision explicitly provides for "attorney's fees" (see Compl., Ex. A), the Court finds that plaintiff is also entitled to attorney's fees.

A.  Reasonable Attorneys' Fees

"The district court retains discretion to determine . . . what constitutes a reasonable fee."  Millea v. Metro-North R.R. Co., 658 F.3d 154, 166 (2d Cir. 2011) (citing LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 758 (2d Cir. 1998)).  "The traditional starting point for determining a reasonable attorneys' fee award is the 'lodestar' amount, which results in a presumptively reasonable fee."  Dunn v. Advanced Credit Recovery, Inc., No. 11 CV 4023, 2012 WL 676350,

at *5 (S.D.N.Y. March 1, 2012) (citing <u>Perdue v. Kenny A.</u>, 559 U.S. 542, 551-52 (2010); <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany</u>, 522 F.3d 182, 188-90 (2d Cir. 2008)); <u>see also</u> <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d at 166-67 (explaining that it is legal error to fail to calculate the lodestar "as a starting point").

To determine the lodestar amount, a court must determine "the number of hours reasonably expended on the litigation" and multiply that number "by a reasonable hourly rate." <u>Moore v. Diversified Collection Servs., Inc.</u>, No. 07 CV 397, 2013 WL 1622949, at *1 (E.D.N.Y. March 19, 2013), <u>report & recommendation adopted by</u> 2013 WL 1622713 (April 15, 2013); <u>see also</u> <u>Adusumelli v. Steiner</u>, Nos. 08 CV 6932, 09 CV 4902, 10 CV 4549, 2013 WL 1285260, at *2 (S.D.N.Y. March 28, 2013) (explaining that "[c]ourts in the Second Circuit use the familiar 'lodestar' method of calculating reasonable attorney's fees – multiplying the number of hours reasonable expended by a reasonable hourly rate") (citing <u>Millea v. Metro-North R.R., Co.</u>, 658 F.3d at 166); <u>Dunn v. Advanced Credit Recovery, Inc.</u>, 2012 WL 676350, at *5.

Although the lodestar approach results in a "presumptively reasonable" fee, "it is not 'conclusive in all circumstances.'" <u>Millea v. Metro-North R.R. Co.</u>, 658 F.3d at 167 (quoting <u>Perdue v. Kenny A.</u>, 559 U.S. at 554). Rather, in "rare circumstances," a court may adjust the lodestar "when [the lodestar method] 'does not adequately take into account a factor that may properly be considered in determining a reasonable fee.'" <u>Id.</u> (quoting <u>Perdue v. Kenny A.</u>, 559 U.S. at 554); <u>see also</u> <u>Adusumelli v. Steiner</u>, 2013 WL 1285260, at *2. In other words, "a court may not adjust the lodestar based on factors already included in the lodestar calculation itself because doing so effectively double-counts those factors." <u>Id.</u> As the court explained in <u>Dunn v. Advanced Credit Recovery, Inc.</u>, a court should "first use[] the lodestar method to determine the amount of attorneys' fees and then, if necessary, adjust[] the resulting figure using the [<u>Johnson</u>

v. Georgia Highway Express, Inc.] factors to reflect consideration of any special circumstances."[11]  2012 WL 676350, at *5, n.6.

"The burden is on the party moving for attorney's fees to justify the hourly rates sought." Hensley v. Eckerhart, 461 U.S. at 437.  In addition to the parties' evidentiary submissions, the Court may consider its own experience and familiarity with the case and with rates generally charged.  See Cruz v. Local Union No. 3, 34 F. 3d 1148, 1160 (2d Cir. 1994) (noting that "[a] district court's 'choice of rates [is] well within [its] discretion'") (quoting Cabrera v. Jakabovitz, 24 F.3d 372, 393 (2d Cir. 1994), cert. denied, 513 U.S. 876 (1994)).  To "inform and assist the court in the exercise of its discretion, the burden is on the fee applicant to produce satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."  Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984).

Indeed, the Second Circuit has held that in calculating the presumptively reasonable fee, "courts 'should generally use the hourly rates employed in the district in which the reviewing court sits.'"  Simmons v. New York City Transit Auth., 575 F.3d at 174 (holding that when awarding attorney's fees, there is a presumption in favor of relying on the rates where the case is litigated, not where the attorneys are located) (citations omitted).

---

[11] The Johnson factors are as follows:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).

In this case, plaintiff was represented by the law firm of Martyn and Associates, located in Cleveland, Ohio (the "Firm"). The Firm submitted a summary chart setting forth the total hours expended and costs incurred each month. (See Kyser Decl., Ex. B). The fees sought are based on 46 hours spent by Eric Kyser, who bills at the rate of $375 per hour. (See id. ¶ 8). Mr. Kyser asserts that his firm "limits its practice to federal court litigation representing corporate clients," and that he has been admitted to this district pro hac vice. (Id. ¶¶ 2, 3).

Based on the Court's knowledge of the rates generally charged for this type of work in connection with a PACA default, the Court finds the rate of $375 per hour for the legal work performed by Mr. Kyser to be within the reasonable range. See, e.g., East Armata, Inc. v. East End Produce, Inc., No. 14 CV 44, 2015 WL 10457210, at *5 (E.D.N.Y. Jan. 7, 2015), report and recommendation adopted, 2016 WL 917935 (E.D.N.Y. Mar. 9, 2016) (awarding counsel an hourly rate of $365.00 per hour for 13.05 hours of work on a PACA default); Hop Hing Produces Inc. v. L Supermarket, Inc., No. 12 CV 1401, 2013 WL 1232919, at *6 (E.D.N.Y. Mar. 4, 2013), report and recommendation adopted, 2013 WL 1232483 (E.D.N.Y. Mar. 27, 2013) (awarding an hourly rate of $375.00 for an attorney experienced as a PACA practitioner). See also Food Authority, Inc. v. Sweet & Savory Fine Foods, Inc., No. 10 CV 1738, 2011 WL 477714, at *4-5 (E.D.N.Y. Feb. 4, 2011) (awarding $300-$325 for partners and $305 for senior associates who worked exclusively in PACA litigation); Hugee v. Kimso Apartments, LLC, 852 F.Supp.2d 281, 298-99 (E.D.N.Y. 2012) (holding that "reasonable hourly rates in this district are approximately $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-200 [sic] per hour for junior associates") (citing cases). Accordingly, the Court respectfully recommends that Mr. Kyser's fees be awarded at the hourly rate of $375.

In reviewing a fee application, the court "should exclude excessive, redundant or

otherwise unnecessary hours." Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1999) (citing Hensley v. Eckerhart, 461 U.S. at 433-35, 440); see also Rotella v. Board of Educ., No. 01 CV 434, 2002 WL 59106, at *3-4 (E.D.N.Y. Jan. 17, 2002) (applying percentage reduction to fees of several attorneys for excessive and redundant billing); Quinn v. Nassau City Police Dep't., 75 F. Supp. 2d 74, 78 (E.D.N.Y. 1999) (reducing one attorney's fees by 20% and a paralegal's by 30% for unnecessary and redundant time); Perdue v. City Univ. of N.Y., 13 F.Supp.2d 326, 346 (E.D.N.Y. 1998) (imposing a 20% reduction for redundancy); American Lung Ass'n v. Reilly, 144 F.R.D. 622, 627 (E.D.N.Y. 1992) (finding that "use of so many lawyers for relatively straightforward legal tasks was excessive and led to duplication of work" and deducting 40% of plaintiffs' lawyer's hours).

Similarly, courts routinely apply across-the-board reductions for vague entries, see, e.g., In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (reducing fees based on lack of specificity in description of work performed); DeVito v. Hempstead China Shop, Inc., 831 F. Supp. 1037, 1045 (E.D.N.Y. 1993) (reducing fee request by 40% for, inter alia, insufficient descriptions of work performed), rev'd & remanded on other grounds, 38 F.3d 651 (2d Cir. 1994); Cabrera v. Fischler, 814 F. Supp. 269, 290 (E.D.N.Y. 1993) (reducing fees by 30% for vague entries with insufficient descriptions of work performed), rev'd in part & remanded on other grounds, 24 F.3d 372 (2d Cir.), cert. denied, 513 U.S. 876 (1994); Nu-Life Constr. Corp. v. Board of Educ., 795 F. Supp. 602, 607-08 (E.D.N.Y. 1992) (reducing fees by 30% due in part to lack of specificity in descriptions of work performed); Meriwether v. Coughlin, 727 F. Supp. 823, 827 (S.D.N.Y. 1989) (finding an overall reduction of 15% warranted based on vague descriptions of work performed).

Based on the records submitted to the Court in connection with the instant motion, the

Court is unable to determine whether the request for 46 hours of work is reasonable given that the summary chart provided by counsel does not detail the services performed.  Indeed, without the actual billing records or detailed time sheets, the Court must respectfully recommend that the request for attorney's fees be denied at this time, without prejudice to counsel submitting the necessary documentation required by the Second Circuit.

B.  Costs

Plaintiff also seeks $1,348.45 in costs.  (Kyser Decl., Ex. B).  Again, while the summary chart provided lists the costs incurred each month, there is no information provided as to what the costs were for.  (Id.)

As the Court has noted, "PACA does not require an award of . . . costs, but does permit the court to enforce the parties' contractual agreement by granting such relief."  Bounty Fresh, LLC v. J N.Y. Produce, Inc., No. 12 CV 2415, 2014 WL 1010833, at *6 (E.D.N.Y. Mar. 14, 2014).  In this case, the invoices do not include any  mention of defendants' duty to pay additional legal costs incurred by plaintiff other than attorneys' fees.  Specifically, the relevant language in each invoice reads as follows: "You agree to pay interest . . .and any attorney's fees incurred necessary to collect payment."  (Compl., Ex. A).  While courts have the authority to "enforce the parties' contractual agreement," see Bounty Fresh, LLLC v. J N.Y. Produce, Inc., 2014 WL 1010833, at *6, plaintiff has failed to provide any legal authority that such provisions allow for the Court to reimburse costs to plaintiff under the PACA.  (See Pl.'s 2/25/16 Mem.[12]).  However, in a PACA action, the court granted plaintiff's motion for a default judgment, and awarded plaintiff the amount of costs for items listed in Local Civil Rule 54.1, despite finding

---

[12] Citations to "Pl.'s 2/25/16 Mem." refer to plaintiff's Memorandum of Law in Support of its Motion for Default Judgment, filed on February 25, 2016.

23

that the invoices did not contain any language regarding defendants' liability as to costs. See Poppy's Wholesale Produce Inc. v. S&S Grocery of N.Y. Corp., No. 11 CV 4337, 2012 WL 2373629, at *1 (E.D.N.Y. June 22, 2012), adopting in part and overruling in part, 2012 WL 2374220, at *4 (E.D.N.Y. Apr. 25, 2012). Specifically, the court held that "'Federal Rule of Civil Procedure 54(d)(1) permits the prevailing party to receive its costs [for the items listed in Local Civil Rule 54.1] even if it is not eligible to receive its attorney's fees' under PACA." Hop Hing Produces Inc. v. Lin Zhang Trading Co., No. 11 CV 3259, 2013 WL 3990761, at *7 (E.D.N.Y. Aug. 5, 2013) (quoting Poppy's Wholesale Produce Inc. v. S&S Grocery of N.Y. Corp., 2012 WL 2373629, at *1). Pursuant to Local Civil Rule 54.1, reimbursable costs include "the filing fee, service costs, and certain transcript expenses, but exclude counsel's travel and legal research expenses." GM Produce Sales LLC v. Sam Jin World Trading, Inc., No. 12 CV 4192, 2014 WL 4364817, at *4 (E.D.N.Y. Aug. 11, 2014), report and recommendation adopted, 2014 WL 4385415 (E.D.N.Y. Sept. 3, 2014) (citing Loc. Civ. R. 54.1(c)). In order to recover such costs, plaintiff is still required to provide the Court with adequate documentation that it actually incurred the costs. See id.; Gunawan v. Sake Sushi Restaurant, 897 F. Supp. 2d 76, 96 (E.D.N.Y. 2012) (declining to award costs where plaintiff had not provided any documentation in support thereof).

Since the agreement between plaintiff and defendants fails to mention defendants' duty to pay any costs incurred by plaintiff (see discussion supra at 23), plaintiff may only be reimbursed for the cost of items listed in Local Civil Rule 54.1(c). Given that Local Civil Rule 54.1 allows for plaintiff to recover the filing fee, the Court takes judicial notice of the filing fee in this district, and respectfully recommends that plaintiff be awarded **$400.00**. See, e.g., New Son Yeng Produce N.Y. LLC v. New A & N Food Mkt., Inc., No. 13 CV 5012, 2014 WL 3725874,

24

at *7-8 (E.D.N.Y. July 25, 2014) (awarding the $400.00 filing fee in a PACA action despite the contract not providing any reimbursement of costs); Hop Hing Produces Inc. v. Lin Zhang Trading Co., 2013 WL 3990761, at *7 (awarding the filing fee in a PACA action); Double Green Produce, Inc. v. Zhen Mkt. Inc., No. 12 CV 1685, 2013 WL 3893332, at *5 (E.D.N.Y. July 26, 2013) (awarding plaintiff the filing fee for commencing the action, despite plaintiff failing to provide any documentation in support of its request for costs); Joe Hand Promotions, Inc. v. Elmore, No. 11 CV 3761, 2013 WL 2352855 at *12 (E.D.N.Y. May 29, 2013) (taking judicial notice of the $400.00 filing fee in this district and awarding it as part of costs).

Insofar as no documentation has been provided in support of plaintiff's request for the remaining $948.45, the Court respectfully recommends that this request be denied, without prejudice to plaintiff submitting the necessary supporting documentation.  Cf. GM Produce Sales LLC v. Sam Jin World Trading, Inc., 2014 WL 4364817, at *4, report and recommendation adopted, 2014 WL 4385415 (awarding costs in a PACA case, pursuant to Federal Rule of Civil Procedure 54(d)(1), because plaintiff adequately documented that it incurred such costs).


IV.   Injunctive Relief

The Court notes that in its Complaint, plaintiff requests that the court enjoin defendants from "interfering, assigning, or otherwise disposing of" the trust fund assets  (Compl. ¶ 40(c)). However, plaintiff fails to request injunctive relief in either its Motion for Default Judgment or its Proposed Order of Default Judgment.  Consequently, the Court finds that plaintiff has not demonstrated that injunctive relief is required and respectfully recommends that injunctive relief not be granted at this time.

<u>CONCLUSION</u>

In summary, the Court finds that plaintiff has sufficiently alleged violations of Section 499(e) of PACA by defendants for failing to pay trust funds and failing to pay for goods sold. Accordingly, the Court respectfully recommends that a default judgment be entered against defendants jointly and severally, and that plaintiff be awarded a total amount of **$39,325.56**, representing: (1) the sums owed under the invoices in the amount of $28,564; (2) prejudgment interest through the date of this Report and Recommendation in the amount of $10,361.56; and (3) $400 in costs. If plaintiff wishes to pursue its request for attorneys' fees and any additional amount in costs, it is recommended that plaintiff be permitted to supplement its papers within 14 days of the district court's decision on this Report and Recommendation.

Any objections to this Report and Recommendation must be filed with the Clerk of the Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. Failure to file objections within the specified time waives the right to appeal the District Court's Order. See 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; Small v. Sec'y of Health & Human Servs., 892 F.2d 15, 16 (2d Cir. 1989).

The Clerk is directed to send copies of this Report and Recommendation to the parties either electronically through the Electronic Case Filing (ECF) system or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
        September 28, 2020

                                        /s/ Cheryl L. Pollak
                                    Cheryl L. Pollak
                                    Chief United States Magistrate Judge
                                    Eastern District of New York

26